## KELLY v. BOARD OF EDUCATION OF MILLARD COUNTY et al.

No. 3504.    Decided July 27, 1920.    (191 Pac. 1070.)

SCHOOLS AND SCHOOL DISTRICTS—CONSOLIDATED DISTRICT, WITH-OUT ELECTION, COULD NOT ISSUE AND SELL BONDS TO PAY INDEBTED-NESS CREATED IN VIOLATION OF CONSTITUTION PRIOR TO CONSOLI-DATION. A consolidated school district has not the power, under Comp. Laws 1917, section 4619, and Laws 1919, chapter 91, section 1, to issue and sell bonds of the consolidated school district to pay an indebtedness created by one of the school districts prior to consolidation, in violation of Const. art. 14, section 3, providing that an indebtedness cannot be created in excess of the taxes of the current year unless an election shall be held and a majority of the voters shall favor such a debt.

Proceedings by James A. Kelly to prohibit the Board of Education of Millard County and others from issuing and selling bonds.

PEREMPTORY PROHIBITION AWARDED.

*Grover A. Giles* and *J. S. Giles,* both of Fillmore, for plaintiff.

*James A. Melville, Jr.,* of Salt Lake City, for defendants.

THURMAN, J.

Plaintiff instituted this proceeding to prohibit defendants from issuing and selling certain district school bonds and paying the indebtedness referred to in the application. The material facts are not in dispute.

On the second of May, 1916, the county commissioners of

Millard county, by appropriate resolution, consolidated all
of the school districts in said county into one school district
of first class, under the name and style of "the board of
education of Millard county school district, in Millard coun-
ty, state of Utah."   By said consolidation the defendant
board became liable for all the outstanding debts and obliga-
tions of the school district existing in the county at the time
of the consolidation.   Comp. Laws Utah, 1917, section 4619.
Among the districts so consolidated were the Central school
district No. 5 and the Holden school district No. 8, each of
which was burdened with an indebtedness created in excess
of the taxes of the current year, in violation of section 3,
article 14 of the state Constitution.   The debts of the two
districts aggregated a sum in excess of $20,000.

On the twelfth day of August, 1919, after notice duly pub-
lished and in pursuance of the provisions of chapter 91, Sess.
Laws Utah 1919, providing for the redemption, cancellation,
and refunding of school bonds and issuance of funding
bonds, the defendant board, composed of the other defend-
ants as members thereof, adopted a resolution for the issu-
ance and sale of bonds of the defendant school district in the
sum of $20,000 for the purpose of paying the aforesaid in-
debtedness.   The plaintiff is a resident and taxpayer of the
said county and school district, and as such makes this ap-
plication for relief.

The complaint of plaintiff with great particularity details
the various steps taken by the county commissioners and
defendant board from the date of the consolidation of the
school districts down to the commencement of this action.
Every necessary step, under the laws of this state, seems to
have been taken by the board, and the provisions of the law
carefully followed in every respect, prior to the adoption of
the resolution providing for the issuance and sale of the
bonds.   Plaintiff, in his brief, charges various irregularities
and omissions on the part of the defendants in regard to the
proceedings prior to the adoption of the resolution, but after
a careful investigation of the proceedings and the law ap-
plicable thereto we are of the opinion that the law was sub-

stantially complied with in every essential particular. The only question to be determined, therefore, is: Does the defendant board have the power, under the law to which we have referred, to issue and sell bonds of the school district to pay an indebtedness created in violation of the Constitution? The section of the Constitution above referred to reads as follows:

"No debt in excess of the taxes for the current year shall be created by any county or subdivision thereof, or by any school district therein, or by any city, town or village, or any subdivision thereof in this state; unless the proposition to create such debt, shall have been submitted to a vote of such qualified electors as shall have paid a property tax therein, in the year preceding such election, and a majority of those voting thereon shall have voted in favor of incurring such debt."

Chapter 91, Sess. Laws Utah 1919, upon which defendants rely, after stating the necessary steps to be taken by the board and the requisites to be observed in refunding bonds previously issued, has the following provision on page 282:

"Bonds may also be issued by a consolidated school district without an election, for the funding, purchase or redemption of the outstanding indebtedness of any such consolidated school district, provided such debt was contracted prior to consolidation and was assumed by such consolidated school district pursuant to law. The legality, regularity, and validity of any such outstanding indebtedness may be determined in the manner hereinbefore set forth for determining the validity of bonds to be refunded by any board of education."

It is assumed by the defendants that the board of education of the consolidated districts has the power to refund the indebtedness of a school district incurred prior to its consolidation with other districts in the county, whenever it is made to appear that such district has received the consideration for such indebtedness and been the beneficiary thereof. There is no question but that in the present case the debt created by each of the districts before consolidation was created in good faith for the benefit of the schools therein. The detailed account of the various items constituting such indebtedness in each of the two districts mentioned shows conclusively that it was incurred strictly for school purposes.

In our view of the Constitution, however, the purpose for which the debt was created or obligation incurred is in no sense a controlling factor. The primary question is: Was the indebtedness a binding obligation upon the district creating it? Could the district itself before consolidation have been forced to pay the obligation as against a defense interposed that it was in excess of the debt limit provided by the Constitution? If the district itself could not have been compelled to pay for the reasons stated it must be because it was not a binding obligation, and therefore, in contemplation of law, was no debt at all. If it was no debt at all, it clearly does not come within the meaning of the term "indebtedness" as used in the excerpt last above quoted. This proposition seems to me to be unassailable. The language of the constitutional provision above quoted is plain and cannot be misunderstood. It is admitted by the demurrer in the present case that the so-called indebtedness in question was all in excess of the debt limit fixed by the Constitution. It is admitted, also, that the question of indebtedness was not submitted to a vote of the electors of the districts in any manner, or at all. The question presented is so elementary as to preclude the necessity of entering upon an extended review of the authorities. In 28 Cyc. at pages 1560, 1561, it is said:

"A contract made by a municipality in excess of its debt limit fixed by the Constitution or by statute is void, at least as to the excess; and every one dealing with a municipality is charged with notice of a limitation upon the amount of its indebtedness."

Again, at page 1538 of the same volume, it is said:

"Constitutional limitations upon the amount of municipal indebtedness are mandatory."

In 35 Cyc. at page 951, speaking of the power of school districts, the author says:

"All persons dealing with district boards, committees, or officers are bound to ascertain the limits of their authority as fixed by statute or organic law, and are therefore chargeable with notice of any limitation thereon, as in respect to the amount they are authorized to expend."

The doctrine is stated in 24 R. C. L. at page 609, thus:

"The power of school districts to incur indebtedness is very generally limited by the state Constitutions or statutes. The limitation is absolute, and after it has been reached the officers and agents of a district are powerless, and cannot in any manner or for any purpose burden it with any greater amount. A contract which increases the indebtedness of a school district beyond the constitutional limit is therefore void, and the fact that the district has received the benefits thereof does not render it liable on an implied contract to pay a quantum meruit therefor."

This proposition is incontrovertible upon any rational or consistent theory. It cannot be presumed that the Legislature of 1919, in the law to which we have referred, intended anything more than that the school board should have power to issue its bonds for the refunding of obligations that were lawful and binding when created.

Plaintiff contends that the law of 1919 is unconstitutional. If it is susceptible of being applied as attempted by defendants in the present case, plaintiff's contention is undoubtedly correct. We do not believe it is reasonably susceptible of any such construction. If an apparent obligation incurred in violation of the plain provision of the Constitution is in fact not an indebtedness at all, as we have before suggested, then the act of 1919, relied on by defendants, affords no justification in the present case for the contemplated issue and sale of bonds. Plaintiff, in the prayer of his complaint, prays that the defendants be peremptorily prohibited and restrained from issuing or selling said bonds, or any of them, or from paying such indebtedness, or any part of the same.

We are not inclined in this proceeding to grant relief to the full extent prayed for in the complaint. The so-called indebtedness, as hereinbefore stated, was incurred in good faith. The schools received the benefit thereof. The taxpayers of the district were relieved to that extent. The business institutions that furnished the supplies and kept the schools running have not been paid. If the defendant board and taxpayers of the county feel that the obligation is at least a moral one, and can provide some lawful means by which it can be paid, it will be a commendable thing to do. This court is not disposed to go further in this decision than

to hold that the method proposed in this proceeding is unconstitutional and for that reason should be prohibited.

For the reasons stated the defendants are hereby peremptorily prohibited from issuing or selling the school bonds herein referred to as prayed for in the complaint.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.